UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

LOUIS LILAKOS, NICK PRITZAKIS, TIFFANY
LILAKOS,

                    Plaintiffs,

          -against-

NEW YORK CITY, VLADIMR PUGACH, NYPD
SERGEANT ARTHUR LEVINE, NYPD OFFICER
JOSEPH GIGLIO, FIRE DEPT. INSPECTOR
ERVIN SANTIAGO, KATHLEEN MCGEE, NYC
MAYOR'S OFFICE OF SPECIAL
ENFORCEMENT, NYC DEPARTMENT OF
BUILDINGS, DEREK LEE, ENVIRONMENTAL
CONTROL BOARD,

                    Defendants.

-------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ JAN 21 2016

BROOKLYN OFFICE

**REPORT AND RECOMMENDATION
14 CV 5288 (PKC)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiffs Louis Lilakos, Tiffany Lilakos, and Nick Pritzakis bring this *pro se* civil action

pursuant to 42 U.S.C. §§ 1983, 1985 and state law alleging that Defendants violated their Fourth

and Fourteenth Amendment rights by issuing and upholding an order requiring them to vacate

their home. Mr. Lilakos also alleges that Defendants violated his rights by causing him to be

falsely arrested on July 18, 2013. Defendants move to dismiss Plaintiffs' Amended Complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter

jurisdiction and for failure to state a claim upon which relief can be granted. The Honorable

Pamela K. Chen referred Defendants' motion to me for a Report and Recommendation in

accordance with 28 U.S.C § 636(b). For the reasons set forth below, it is respectfully

recommended that Defendants' motion to dismiss Plaintiffs' Amended Complaint should be

granted in part and denied in part.

## BACKGROUND

The following facts are derived from the allegations in Plaintiffs' Amended Complaint, which, for the purposes of this motion, are taken to be true, as well as the administrative and judicial decisions referenced therein. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (considering, on a motion to dismiss, documents referenced in the complaint and matters of which judicial notice may be taken). Plaintiffs formerly occupied a two-family house located at 47-09 43rd Avenue in Sunnyside, New York ("the Property"). (Am. Compl. ¶¶ 1–4, 21, ECF No. 24.) Plaintiff Louis Lilakos ("Mr. Lilakos") owned the Property. (Id. ¶ 34.) He bought the Property in 2012, and lived there with his then 14-year-old son, adult daughter, Tiffany, and a houseguest, Nick Pritzakis. (Id.) Mr. Lilakos also rented out rooms to temporary guests, advertising rooms in the two-family house on websites like AirBnB, and provided transient accommodations to "young people . . . experiencing financial difficulties." (Id. ¶ 36; see id. ¶¶ 34–37.)

Prior to 2012, the Department of Buildings ("DOB") last inspected the Property in 2006. (Id. ¶ 40.) Within the first year of Mr. Lilakos's purchase of the property, the DOB inspected the Property seven times. (Id. ¶¶ 40, 54.) The inspectors issued Notices of Violation ("NOV") after two visits, which were dismissed, and two landmark violations, which remain pending in a "lengthy landmarks approval process." (Id. ¶¶ 44, 45, 48.)

On June 13, 2013, Vladimir Pugach of the DOB's Office of Special Enforcement ("OSE"), accompanied by police sergeant Arthur Levine, police officer Joseph Giglio, and fire department inspector Ervin Santiago, knocked on the door of the Property and "walked in . . . uninvited, to take pictures and, using police-like intimidation and bullying tactics, to scare everyone present." (Id. ¶ 54.) They informed Ms. Lilakos that they were conducting a routine

2

inspection and did not require a warrant. (Id.) When Mr. Lilakos appeared at the Property during the inspection, Pugach issued him five NOVs. (Id. ¶ 59.) The inspectors reported finding nine international visitors who were renting space in rooms with bunk beds for stays less than one month. NYC v. Lilakos, Appeal No. 1301027 (OATH Dec. 19, 2013).[1] The five notices alleged the following violations of the New York City Administrative Code ("N.Y.C. Admin. Code") and the New York City Building Code: (1) illegal conversion of a two-family dwelling to a transient use hostel type; (2) failure to comply with maximum floor area requirements per occupant load; (3) failure to provide means of egress for transient use; (4) failure to provide an automatic sprinkler system for transient use; and (5) failure to provide a fire alarm system for transient use. Id.; (Am. Compl. ¶¶ 187, 192, 228).

The next day, on June 14, 2013, three men appeared at the Property without warning, declared it "imminently perilous to life," and instructed the occupants to gather their belongings and vacate the premises. (Id. ¶ 61.) The unidentified men posted a copy of Vacate Order #Q299/13 on the doors of the Property. (Id.) It was a peremptory vacate order issued pursuant to section 28-207.4 of the New York City Administrative Code. (Id. ¶ 87.) The Vacate Order stated, "Two family house is illegally converted into a transient use hostel without providing the required means of egress, sprinkler system, fire alarm, and exceeds the occupancy requirements." (Id. ¶ 97.) Derek Lee, a DOB Borough Commissioner, signed the Vacate Order, although he never personally visited the Property. (Id. ¶¶ 90–92.) On July 18, 2013, "after a month of homelessness," Mr. Lilakos attempted to reenter the Property to recover some belongings, but was arrested and escorted off the premises by three unidentified police officers. (Id. ¶ 135.)

---

[1] This decision from the Office of Administrative Trials and Hearings is referenced in Plaintiffs' Amended Complaint (¶ 258), and is available at http://archive.citylaw.org/ecb/Long%20Form%20Orders/2013/1301027.pdf.

On July 30, 2013, the Environmental Control Board ("ECB") convened a hearing regarding the June NOVs, but adjourned the hearing to locate a necessary witness. (Id. ¶ 141.) The ECB held the hearing on August 27, 2013. (Id. ¶¶ 64, 141.) Despite receiving no notice of any ECB hearing, Mr. Lilakos made pre-hearing discovery requests and motions, which the DOB and ECB failed to address. (Id. ¶¶ 85, 146–149, 166, 172.) At the August 27 hearing, Pugach allegedly falsely testified that he observed six beds in a room, no fire alarm, and five dwelling units in the two-family Property. (Id. ¶¶ 64, 100–01, 114, 118, 152–56, 160.) On September 3, 2013, Administrative Law Judge ("ALJ") Joan Beck-Wall of the ECB upheld the Vacate Order. (Id. ¶ 171.) Mr. Lilakos appealed the ECB's decision to the Office of Administrative Trials and Hearings ("OATH"). (Id. ¶¶ 273–74.) On December 19, 2013, OATH dismissed one NOV alleging insufficient floor area and affirmed the remaining four NOVs. Lilakos, Appeal No. 1301027. Mr. Lilakos petitioned the ECB for a superseding appeal decision and, on May 29, 2014, the ECB denied that request.[2] Pending these appeals, Mr. Lilakos sought to resolve the matter directly with OSE's then director Kathleen McGee. (Am. Compl. ¶ 238.) On September 30, 2013, she offered to lift the Vacate Order if Mr. Lilakos submitted Certificates of Correction, but he refused, contending that the certificates unconstitutionally required him to admit that the violations existed. (Id. ¶¶ 240–41.)

In 2014, Mr. Lilakos initiated two Article 78 actions in the New York Supreme Court, one against the DOB, Index No. 8827/14, and one against the ECB, Index No. 9640/14. He claimed that the agencies acted in an arbitrary and capricious manner, that the Vacate Order was issued in error, and that the ECB's decision was not supported by substantial evidence. (Id. ¶ 279; ECF No. 43-1.) In opposing the latter action, Plaintiffs assert that the ECB alleged facts

---

[2] This decision and order is available at http://archive.citylaw.org/ecb/Long%20Form%20Orders/2014/1301365.pdf. Although not referenced in Plaintiffs' Amended Complaint, the Court takes judicial notice of it as a public record.

that were not "part of the record." (Am. Compl. ¶ 286.) The New York Supreme Court denied Mr. Lilakos's request to rescind the Vacate Order, finding that the DOB did not issue it in error, and denied Mr. Lilakos's claim against the ECB to the extent he alleged that its decision was arbitrary and capricious. (ECF No. 43-1.) Because the trial court lacked authority to make factual findings under Article 78, the Supreme Court transferred Mr. Lilakos's evidentiary challenge to the ECB's decision to the Appellate Division. (Id.)

Plaintiffs initiated this *pro se* action on September 10, 2014, and filed an Amended Complaint removing Lilakos's minor son as a plaintiff. (ECF Nos. 1, 24.) Plaintiffs assert that Defendants violated their due process and equal protection rights by issuing a legally insufficient vacate order and conducting biased ECB adjudications. In addition, Plaintiffs raise claims of false arrest, malicious prosecution, willful misconduct, gross negligence, and conspiracy to deprive Plaintiffs of their civil rights under 42 U.S.C. § 1985. (See id. ¶¶ 287–321.) Plaintiffs seek millions of dollars in actual and punitive damages. (Id. ¶ 323.)

Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 39–43.) Plaintiffs oppose Defendants' motion (ECF No. 46) and Defendants have replied (ECF No. 44). At the pre-motion conference on February 18, 2015, Mr. Lilakos informed the Court that he had sold the Property in December 2014. (ECF No. 43-2 at 18.)

## DISCUSSION

### I. Treatment of *Pro Se* Submissions

The Court holds Plaintiffs' *pro se* pleading to "less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980). We must "construe [the]

complaint broadly, and interpret [it] to raise the strongest arguments that it suggests." Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 145–46 (2d Cir. 2002); see also Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (liberally construing *pro se* pleading); Estes v. Toyota Fin. Serv., No. 14-cv-1300, 2015 WL 222137, at *3 (E.D.N.Y. Jan. 13, 2015) (same).[3] However, the Court "cannot invent factual allegations that [a plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Prior to dismissing a *pro se* complaint, the Court should "grant[] leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted).

With these standards in mind, the Court turns first to Defendants' Rule 12(b)(1) motion because "if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); see Peaches & Cream LLC v. Robert W. Baird & Co. Inc., No. 14-cv-6633, 2015 WL 1508746, at *2 (E.D.N.Y. Mar. 31, 2015).

## II.  Rule 12(b)(1) Motion

### A.  Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000). It is Plaintiffs' burden to establish by a preponderance of the evidence that subject matter jurisdiction exists over their claims. Id.; United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square Inc.,

---

[3] The Clerk of Court is respectfully directed to send Plaintiffs the attached copies of all the unpublished decisions cited herein.

30 F.3d 298, 301 (2d Cir. 1994). When the plaintiff "simply . . . alleg[es] a cause of action, not patently frivolous on its face, that purportedly arises under a federal statute, [the plaintiff has] made allegations sufficient to sustain subject matter jurisdiction in the district court." Falls Riverway Realty, Inc. v. City of Niagara Falls, N.Y., 754 F.2d 49, 55 n.3 (2d Cir. 1985); see In re Stock Exchs. Options Trading Antitrust Litig., 317 F.3d 134, 150 (2d Cir. 2003) (noting that dismissal is appropriate for want of subject matter jurisdiction, as opposed to failure to state a claim, when the claim asserted is "wholly insubstantial and frivolous").

While the Court must take "all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," Sweet v. Sheahan, 232 F.3d 80, 83 (2d Cir. 2003) (citations omitted), that tenant "is inapplicable to legal conclusions," including Plaintiffs' conclusion that the Court has federal jurisdiction, Iqbal, 556 U.S. at 678. The Court may also test the veracity of Plaintiffs' jurisdictional allegations on a Rule 12(b)(1) motion by considering evidence outside of the pleadings. Makarova, 201 F.3d at 113.

### B. Federal Question Jurisdiction

Plaintiffs here explicitly invoke federal question jurisdiction under 28 U.S.C. § 1331 and cite 42 U.S.C. § 1983 as the statutory basis for their claim. To establish federal question jurisdiction at least one of Plaintiffs' claims must arise "under the Constitution, laws, or treaties of the United States." § 1331. Simply naming a federal statute does not establish § 1331 jurisdiction. "[A] case 'aris[es] under' federal law . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006).

A § 1983 plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities

7

secured by the Constitution and laws (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights, but is a vehicle for "vindicating federal rights elsewhere conferred." Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). Plaintiffs meet these pleading requirements by alleging that the City of New York and its employees violated their rights guaranteed by the Fourth and Fourteenth Amendments.

Defendants argue that Plaintiffs' pleading fails to establish federal question jurisdiction because their claims that the DOB defendants improperly inspected the subject premises and improperly issued NOVs and the Vacate Order, as well as their claims of procedural improprieties by the ECB, "are clearly state law matters, couched in quasi-constitutional hyperbole . . . ." (Mem. at 8.) Although Defendants are correct that "federal courts do not generally have subject-matter jurisdiction over housing matters," that is a general rule subject to exceptions. Basch v. N.Y.C. Hous. Auth., No. 12-CV-4452, 2012 U.S. Dist. LEXIS 134123, at *3 (E.D.N.Y. Sept. 19, 2012) (citing cases). In Basch, which Defendants cite, and in cases cited by Basch, the Court dismissed complaints for lack of subject matter jurisdiction where they involved purely landlord-tenant matters, *i.e.* where the plaintiff was seeking housing, challenging evictions, or disputing other apartment-related issues but did not allege some factual foothold for federal jurisdiction. See id.; see, e.g., Rosquist v. St. Marks Assoc., LLC, No. 08-CV-2764, 2008 WL 2965435, at *2 (E.D.N.Y. Aug. 1, 2008) (dismissing landlord-tenant dispute as purely state law matter); Townsend v. NYCHA Law Dep't, No. 12-CV-4401, 2012 WL 3903468, at *1 (E.D.N.Y. Sept. 6, 2012) (dismissing complaint involving disputes regarding apartment repairs in subsidized housing).

Unlike Basch and the other cases Defendants cite, Plaintiffs here allege constitutional harm by state actors. See Papeskov v. Nitis, No. 12-CV-1740, 2012 WL 1530731, at *2

8

(E.D.N.Y. Apr. 27, 2012) (dismissing claim against the City for eviction when plaintiff "fail[ed] to specify any constitutional harm"); Galland v. Margules, No. 05 Civ. 5639, 2005 WL 1981568, at *2 (S.D.N.Y. Aug. 17, 2005) (dismissing claim involving landlord-tenant matter even construing as § 1983 claim when there was no allegation that defendants were state actors). Courts in this Circuit have recognized that a plaintiff can plead a basis for federal jurisdiction under § 1983 by alleging that the government unconstitutionally interfered with his protected property interest. See Ahmed v. Town of Oyster Bay, 7 F. Supp. 3d 245, 253 (E.D.N.Y. 2014) (evaluating plaintiffs' challenges to revocation of certificate of occupancy of retail store as a § 1983 due process claim); Oliver v. N.Y.C. Hous. Auth., No. 10-CV-3204, 2011 WL 839110, at *2 (E.D.N.Y. Mar. 2, 2011) (noting that subsidized housing tenant has protected property interest that cannot be divested without due process). Plaintiffs claim that Defendants violated their due process rights because the OSE defendants had no legal authority to issue the Vacate Order or factual basis given that the alleged building code violations did not exist, (Am. Compl. ¶ 89); that Mr. Lilakos received no notice of the ECB's hearing, (id. ¶ 85); and that the DOB's actions were arbitrary and capricious and its NOVs baseless, (id. ¶¶ 40, 51, 118–32). These allegations against Defendants are sufficient to establish subject matter jurisdiction under § 1983. Additionally, Plaintiffs raise other constitutional claims under § 1983—namely, malicious prosecution, false arrest, and selective enforcement—regarding Defendants' issuance and enforcement of the Vacate Order. Defendants' argument that Plaintiffs' allegations are insufficient to establish Defendants' liability is better addressed in the Rule 12(b)(6) context. It is therefore respectfully recommended that Defendants' Rule 12(b)(1) motion should be denied.[4]

---

[4] The Rooker-Feldman doctrine does not wrest subject matter jurisdiction from this Court even though this suit requires review of an issue decided by the state court's decisions because the state court decisions herein issued *after* Plaintiffs commenced this suit. See Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 87 (2d Cir. 2005) (applying Rooker-Feldman only if state-court judgment issued prior to commencement of district court

### III.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6) (permitting dismissal of a complaint that does not state a claim upon which relief can be granted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In considering a motion brought under Rule 12(b)(6), the Court assumes the facts alleged in the Amended Complaint to be true, but is limited to those facts, documents attached to that complaint as exhibits, documents either incorporated by reference or "integral" to the plaintiff's claims, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. Dangler v. N.Y.C. Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 44 (2d Cir. 1991); KatiRoll Co., Inc. v. Kati Junction, Inc., 33 F. Supp. 359, 365 (S.D.N.Y. 2014); In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003). The Court should not consider Defendants' statement of facts in their memorandum of law regarding Defendants' inspection of the Property and issuance of the NOVs on the instant motion. Defendants' statement of facts is not part of the pleadings. The Court should consider the March and October 2014 state court decisions and orders from Mr. Lilakos's Article 78 proceedings that Defendants submitted because the December 2014 Amended Complaint incorporates these decisions and orders by reference. (See Mem., ECF No. 42 at 1–3; ECF No. 39; Am. Compl. ¶ 279.)

---

proceedings).

## A. Municipal Defendants

Under the New York City Charter, Plaintiffs cannot sue the municipal agencies. <u>Lauro v.</u>
<u>Charles</u>, 219 F.3d 202, 205 n.2 (2d Cir. 2000). Instead, claims against municipal agencies must
be brought against the City of New York. The DOB, ECB, and OSE should therefore be
dismissed as defendants, and Plaintiffs' claims against those entities should be construed as
claims against the City of New York. <u>See</u> <u>id.</u>; <u>DePietro v. City of New York</u>, No. 09-CV-932,
2010 WL 449096, at *1 n.1 (E.D.N.Y. Feb. 2, 2010) (dismissing Department of Buildings and
Environmental Control Board as improperly named defendants).

Plaintiffs' claims against the City of New York should also be dismissed, for failure to
state a cognizable claim under § 1983. "[A] local government may not be sued under § 1983 for
an injury inflicted solely by its employees or agents. Instead, it is when execution of a
government's policy or custom, whether made by its lawmakers or by those whose edicts or acts
may fairly be said to represent official policy, inflicts the injury that the government as an entity
is responsible under § 1983." <u>Monell v. N.Y.C. Dep't of Social Servs.</u>, 436 U.S. 658, 694 (1978).
Here, Plaintiffs' Amended Complaint focuses on the alleged unconstitutional acts of the
individual defendants. However, Plaintiffs also challenge two DOB policies or practices.

First, Plaintiffs argue that the DOB requires homeowners to certify that noticed code
violations have been corrected before the DOB will revoke any vacate order or stop the daily
accrual of penalties. (Compl. ¶¶ 9, 240.) Plaintiffs assert that requiring a property owner to
certify a correction forces them to admit a violation they disagree existed. (<u>Id.</u> ¶¶ 68–70, 76.)
This, they argue, would require them to commit perjury. (<u>Id.</u>) Contrary to Plaintiffs' allegation,
homeowners charged with illegal conversion are not required to submit a DOB Certificate of
Correction. According to the Certificate of Correction itself, which is incorporated by reference

11

in the Amended Complaint, a homeowner has the option of filing the Certificate of Correction to stop the accrual of daily penalties. The form requires only an affirmation that the homeowner has "complied with the order of the [DOB] Commissioner to correct each condition cited on th[e] violation."[5] The homeowner can certify the correction and dispute the existence of the violations at a subsequent hearing. Only if the homeowner wishes to avoid a hearing is he required to concede, under Section 3, that the violations existed. Because the Certificate of Correction contradicts Plaintiffs' allegations that Mr. Lilakos was *forced* to admit the violations existed, the Certificate controls the Court's inquiry here. See Tufamerica, Inc. v. Diamond, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) ("'If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control[s], and the court need not accept the allegations in the complaint as true.'" (citation omitted)). Based on the Certificate, Plaintiffs have failed to plausibly state any claim for an officially-adopted custom, policy, or practice that caused the violation of their constitutional rights.

However, as discussed below, Plaintiffs sufficiently raise a discrete challenge to what potentially is the City's practice of failing to provide a prompt postdeprivation hearing when a peremptory vacate order is issued on an emergency basis. Defendants' motion to dismiss the claims against the City should therefore be granted except as to the due process claim. Moreover, as Defendants argue, Plaintiffs' claim for punitive damages against the City of New York and its agencies is not permitted as a matter of law and should be dismissed. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983); see also Carbajal v. Cnty. of Nasssau, 271 F. Supp. 2d 415, 424 (E.D.N.Y. 2003) (dismissing punitive damages claim against municipality).

---

[5] New York Dep't of Buildings, Form AEU2: Certificate of Correction and Instructions, available at http://www.nyc.gov/html/dob/html/development/forms_violations.shtml#aeu2.

### B. Due Process Claims

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ." U.S. Const., amend. XIV. This prohibition extends to governmental entities charged with carrying out state action, such as municipalities. See Horvath v. Westport Library Ass'n, 362 F.3d 147, 151 (2d Cir. 2004) (stating that the Fourteenth Amendment due process right applies only to governmental entities whose action may be fairly attributed to the State).

#### 1. Valid Property Interest

To assert a violation of procedural due process rights with respect to the deprivation of a property interest, a plaintiff must "first identify a property right, [and] second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." Local 342, Long Island Publ. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted); see also Ahmed, 7 F. Supp. 3d at 254. The test for substantive due process also requires a plaintiff to show that the government has denied him his "valid property interest." Cine SK8 v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007) (citing Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001)).

Liberally construed, Plaintiffs' property interest at stake here is the right to occupy the Property despite alleged violations of New York City's administrative and building codes. "In order for an interest in a particular land-use benefit to qualify as a property interest for the purposes of the . . . due process clause[,] a landowner must show a 'clear entitlement' to that benefit." O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir. 2007) (citation omitted); R-Goshen LLC v. Vill. of Goshen, 289 F. Supp. 2d 441, 450 (S.D.N.Y. 2003) ("To have a property

interest entitled to Fourteenth Amendment procedural protection, a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). State law defines the scope of a person's property interest. Shervington v. Vill. of Piermont, No. 09 Civ. 4273, 2012 WL 1757527, at *16 (S.D.N.Y. May 16, 2012) (citing R.R. Vill. Assoc. v. Denver Sewer Corp., 826 F.2d 1197, 1201–02 (2d Cir. 1987)).

Under state law, because they are considered family or guests of Mr. Lilakos, Tiffany Lilakos and Nick Pritzakis have no property interest in the Property. Therefore, they cannot state a due process claim. See Pelt v. City of N.Y., No. 11-CV-5633, 2013 WL 4647500, at *9 (E.D.N.Y. Aug. 28, 2013) (explaining that licensees do not have a cognizable property interest).[6] Mr. Lilakos, however, was the owner of the Property. I therefore consider whether, taken in the most favorable light, the Amended Complaint states a claim that Mr. Lilakos was denied his procedural or substantive due process rights regarding the Property.

### 2. Procedural Due Process Claim

To establish a violation of the right to procedural due process, the plaintiff must show he was deprived of "'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." Boddie v. Connecticut, 401 U.S. 371, 378 (1971). Here, Mr. Lilakos asserts that he was denied procedural due process because he received no notice of the ECB's hearing, (id. ¶ 85), the ECB did not follow its own procedure in adjudicating his case, (id. ¶¶ 166, 174, 177, 186), the DOB's actions were arbitrary and capricious and its NOVs were baseless, (id. ¶¶ 40, 51, 118–32).

---

[6] By failing to allege "an invasion of a concrete and particularized legally protected interest" that was personal to them, Ms. Lilakos and Mr. Pritzakis also fail to establish the Article III requirement of standing. See Ahmed, 7 F. Supp. 3d at 256–57 (finding that employee lacked standing to challenge denial of certificate of occupancy to retail store in which he lacked a protected property interest).

14

To the extent that he challenges the DOB or ECB's actions as arbitrary and capricious, OATH and the New York Supreme Court have decided this issue. "[W]hen a state agency 'acting in a judicial capacity resolves disputed issues of facts properly before it which the parties have had an adequate opportunity to litigate,' . . . federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 478 U.S. 788, 798 (1986); Hill v. Coca Cola Bottling Co., 786 F.2d 550, 553 (2d Cir. 1986) (applying New York collateral estoppel law to administrative decision affirmed in Article 78 proceeding). State court decisions may also be entitled to preclusive effect. Yeshiva Imrei Chaim Viznitz of Boro Park v. City of N.Y., No. 10-CV-05986, 2011 WL 3273273, at *3 (S.D.N.Y. July 27, 2011) (applying New York law to determine preclusive effect of New York state court decision in federal court) (citing Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002)). Under New York law, the doctrine of collateral estoppel, or issue preclusion, "only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Cortes v. City of N.Y., 700 F. Supp. 2d 474, 486 (S.D.N.Y. 2010) (citing Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995)).

Here, the OATH upheld four out of five of the NOVs and the state court decided that the Vacate Order was not "arbitrary and capricious" or "malicious and in error," and that Mr. Lilakos "failed to meet [his] burden of demonstrating that the respondent ECB lacked a rational basis or was arbitrary and capricious in making its determination." Matter of Lilakos v. Lee, No. 8827/2014 (Sup. Ct. Queens Cnty. N.Y. Oct. 30, 2014); Matter of Lilakos v. Envtl. Control Bd., No. 9640/2014 (Sup. Ct. Queens Cnty. N.Y. Mar. 24, 2015); see OATH decision. The violations upheld included inadequate egress, inadequate fire protection, detection, or suppression. When

these violations are present, section 28-207.4 of the City's Administrative Code allows the DOB to issue a peremptory vacate order on an emergency basis. N.Y.C. Admin. Code § 28-207.4.1.[7] No one can occupy a structure under the effect of such a vacate order. Id. § 28-207.4.2. Accordingly, Mr. Lilakos is precluded from relitigating the validity of the Vacate Order.[8]

Mr. Lilakos alleges that he did not receive a "fair opportunity to be heard" by either agency. But the New York Supreme Court rejected Mr. Lilakos's argument, and determined that neither the DOB's action of issuing the NOVs nor the ECB's decision upholding four out of five of those NOVs was arbitrary and capricious. (ECF No. 43-1.) Further, although the Appellate Division has not yet decided Mr. Lilakos's challenge that the ECB's decision was not based substantial evidence, the pendency of that appeal does not undermine the preclusive effect of the agency's determinations. DiSorbo v. Hoy, 343 F.3d 172, 183 (2d Cir. 2003) (noting that a decision may have preclusive effect in New York despite pendency of an appeal from that decision). Nor does the pendency of Mr. Lilakos's appeals from the state Supreme Court decisions affect their preclusive effect. See Matter of Lilakos v. Lee, No. 2015-00841 (N.Y. App. Div. 2nd Dep't); Matter of Lilakos v. Envtl Control Bd., No. 2015-05052 (N.Y. App. Div. 2nd Dep't). DiSorbo, 343 F.3d at 183 (precluding plaintiff from arguing indemnification which was decided by New York court decision despite its pending appeal) (citing Amica Mut. Ins. Co. v. Jones, 445 N.Y.S.2d 820, 822 (App. Div. 2d Dep't 1981) (addt'l citations omitted)). But see Sacher v. Vill. of Old Brookville, 967 F. Supp. 2d 663, 669–70 (E.D.N.Y. 2013) (declining to dismiss claim on collateral estoppel grounds because appeal of Article 78 proceeding was pending). Mr. Lilakos is therefore estopped from challenging procedural due process on that

---

[7] The DOB also has authority to issue vacate orders under § 27-2139 for violations of the Housing Maintenance Code, under Title 27 of the Administrative Code. But, according to Mr. Lilakos's allegations and references in the underlying state court decisions, the DOB issued the vacate order here pursuant to its authority under § 28-207.4.

[8] Despite arguing that the Vacate Order was invalid in his complaint, Plaintiffs appear to concede that the issue is foreclosed, stating in their opposition, "Plaintiffs are not asking the Court to decide on the state's determination concerning that vacate order." (Opp'n at 19.)

ground. See Zbryski v. Bd. of Trs. of N.Y. Fire Dep't Pension Fund, No. 01 Civ. 4801, 2004 WL

2238503, at *5 (S.D.N.Y. Oct. 4, 2004) (finding plaintiff's claims that trustees acted arbitrarily

and capriciously collaterally estopped by Article 78 proceeding in which same issue was

decided).

 As to his other challenges that the agencies did not act in accordance with their procedure

and policy, his challenges are best raised in an Article 78 proceeding. "[W]hen a plaintiff brings

a procedural due process claim '[b]ased on random unauthorized acts by state employees,' the

state satisfies procedural due process so long as it provides a meaningful post-deprivation

remedy." Ahmed, 7 F. Supp. 3d at 254 (quoting Rivera-Powell v. N.Y.C. Bd. of Elections, 470

F.3d 458, 465 (2d Cir. 2006)). The Second Circuit has "held on numerous occasions that . . . an

Article 78 proceeding is a perfectly adequate post[-]deprivation remedy" to challenge such

arbitrary acts. Grillo v. N.Y.C. Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002). Mr. Lilakos does

not allege in the Amended Complaint that his Article 78 proceedings were inadequate to address

these issues. Accordingly, Mr. Lilakos's Article 78 proceedings preclude his procedural due

process claim as to whether the agencies failed to abide by their own procedures. See Ahmed, 7

F. Supp. 3d at 255 (dismissing procedural due process claim challenging violation of lawful

procedure as precluded by Article 78 proceedings).

 However, liberally construed, Plaintiffs' Amended Complaint also challenges the timing

of the ECB's administrative hearing and his inability to promptly challenge the vacate order

regulations. As to the first challenge, it is unclear whether state law mandates the time in which a

hearing on a vacate order must take place. Nothing in Defendants' motion addresses this issue.

Since the vacate order was allegedly imposed on an emergency basis, it stands to reason that for

due process purposes, a post-deprivation hearing must be afforded promptly. See Mitchell v.

17

W.T. Grant Co., 416 U.S. 600, 611 (1974) (suggesting that predeprivation hearing is not required "where a full and immediate post-termination hearing is provided"); see also Federal Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 242 (1988) ("[T]here is a point at which an unjustified delay in completing a post-deprivation proceeding 'would become a constitutional violation,'" which is determined by weighing the competing interests). Here, a month and a half elapsed before Mr. Lilakos first saw an ECB hearing officer following his eviction due to the vacate order, only to be told that the hearing would be adjourned another month to secure witness testimony. Whether this delay rises to the level of an unconstitutional custom, policy or practice is a question which cannot be resolved on the instant motion and should be permitted to proceed for discovery. Defendants' motion to dismiss should therefore be denied on this discrete due process claim.

### 3. Substantive Due Process Claim

Likewise, Mr. Lilakos should be permitted to proceed for discovery on his substantive due process claim. Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit . . . . [Its] standards are violated only by conduct that it is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Harlem Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001). In other words, the challenged governmental action must have been "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005).

A government decision regulating a landowner's use of his property violates the landowner's right to substantive due process only when it acts with no legitimate reason for its decision. Southview Assoc. Ltd. v. Bongartz, 980 F.2d 84, 102 (2d Cir. 1992); Brady v. Town of

Colchester, 863 F.2d 205, 215–16 (2d Cir. 1988); Ahmed, 7 F Supp. 3d at 259; see Watrous v. Town of Preston, No. 10-CV-597, 2011 WL 1743508, at *8 (D. Conn. May 3, 2011) ("Coercive government action, taken without legal authority, may constitute a substantive due process violation."). As a matter of law, the DOB may issue vacate orders in light of a condition that is imminently perilous, dangerous or detrimental to life, public safety or property. N.Y.C. Admin. Code § 28-207.4; Shelter Inc. Realty v. City of N.Y., No. 01-CV-7015, 2007 WL 29380, at *2 (E.D.N.Y. Jan. 4, 2007) (citation omitted). As the state court found, the conditions on the Property presented safety hazards that the Administrative Code explicitly defines as presenting imminently perilous conditions. N.Y.C. Admin. Code § 28-207.4.1. The DOB therefore had a legal basis for issuing the Vacate Order.

However, liberally construed, Plaintiff's allegations raise that he and the other permanent residents were not given the option to exclude transient occupants from the Property in order to be allowed to return to the Property. Why Mr. Lilakos was not given the opportunity to reoccupy the Property as a two-family dwelling instead of requiring Plaintiffs to conform the Property to the building codes for transient use is not addressed by Defendants' motion. The relevant regulation referenced by Defendants, section 28-207.4.3, defines only one scenario in which the DOB would have been required to lift the Vacate Order. That scenario perversely required Mr. Lilakos to conform his Property to a transient use hostel in order to regain the right to live there, even if he agreed to live there with only his son, daughter, and Mr. Pritzakis. Although there may be a good reason for why Plaintiffs were not given such an opportunity, this issue is not addressed on the present record. Therefore, construed in the light most favorable to Plaintiffs, Defendants' motion to dismiss Mr. Lilakos's substantive due process claim should be denied.[9]

---

[9] The Court should not decide this issue on Defendants' motion for qualified immunity. Whether a government actor's conduct was objectively reasonable thereby entitling the actor to qualified immunity "is a fact-intensive

### C. Equal Protection Claim

Plaintiffs also assert a claim that Defendants targeted them, inspecting the Property more often than other homes in the neighborhood and in Queens County. (Am. Compl. ¶¶ 40, 51–52, 83.) To state a claim of selective enforcement under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must plead that his differential treatment from similarly-situated individuals was based on impermissible considerations. See Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 110 (2d Cir. 2006), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008). The Amended Complaint contains no allegation that Plaintiffs were treated differently on the basis of their membership in a protected class.

However, Plaintiffs do sufficiently allege facts giving rise to a plausible class-of-one claim—that is, simply, that they were treated differently without any rational basis. See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). A class-of-one plaintiff must demonstrate "an extremely high degree of similarity between himself and the person to whom he compares himself." Id. Plaintiffs name as a comparator Mr. Lilakos's brother, whose home was down the block from the Property, but was not inspected as frequently as the Property. (Am. Compl. ¶ 51.) They also assert that theirs was one of only three vacate orders issued in Queens County in 2013; one of the other homes was severely damaged due to fire and had an unstable staircase, and the third was a one-family home that was illegally converted to a three-family home. (Id. ¶¶ 131, 137.) Plaintiffs' factual allegations that Defendants consistently declined to issue emergency vacate orders except as to

---

inquiry that is ill-suited to determination on a motion to dismiss." Dorsett-Felicelli, Inc. v. Cnty. of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005); see also McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) ("[A] defendant presenting an immunity defense [such as qualified immunity] on a Rule 12(b)(6) motion instead of a summary judgment must accept the more stringent standard applicable to this procedural route"—that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief"). Given the questions left unanswered by the record, which the Court has noted above, Defendants' qualified immunity defense should not be determined at this early stage.

the Property and did so because of some malicious motive sufficiently alleges a class-of-one

equal protection claim. See DePietro, 2010 WL 449096, at *8 (finding allegations that

defendants "'intentionally treated [him] differently from all others similarly situated [without]

rational basis for the difference in treatment'" and that he was subjected to discrimination in the

"application, misapplication, or non-application of the well-known and established Unsafe

Buildings Procedures" to be sufficient to state an equal protection claim, "'if only barely so'").

Defendants' motion on this claim should be denied and Plaintiffs should be allowed the

opportunity to conduct discovery on the issue of whether they were treated differently and

targeted by Defendants without any rational basis.

### D. False Arrest Claim

Mr. Lilakos[10] alleges that unidentified police officers arrested him in an unreasonable

manner on July 18, 2013, for being present on the Property while the Vacate Order was posted

on the Property's doors. (Am. Compl. ¶¶ 135–39.) Although Mr. Lilakos refers to this as a false

arrest claim, he did not plead such a claim in the Amended Complaint. Although also not

specifically pleaded, liberally construed, Mr. Lilakos also claims that Defendants used

unreasonable force to effect the arrest. Under either theory, however, Mr. Lilakos fails to state a

claim because he fails to name any of the officers who were personally involved in his arrest as

defendants, even as John Does.

Any amendment to add those individual officers as defendants on a false arrest claim

would be futile. This Court analyzes § 1983 claims for false arrest under the law of the State

where the arrest occurred. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). Under New

York law, the plaintiff must establish that he was confined without justification. Jurkowitsch v.

---

[10] Plaintiffs acknowledge that Ms. Lilakos and Mr. Pritzakis "lack standing" to challenge Mr. Lilakos's arrest for reentering the Property post-eviction. (Opp'n at 29.)

The City of N.Y., No. 14 CV 6810, 2015 WL 8489964, at *4 (E.D.N.Y. Dec. 9, 2015) (citing

Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "[T]he existence of probable cause is an

absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).

Probable cause exists "'when the officers have knowledge or reasonably trustworthy information

of facts and circumstances that are sufficient to warrant a person of reasonable caution in the

belief that the person to be arrested has committed or is committing a crime.'" Thomas v. Cnty.

of Putnam, 262 F. Supp. 2d 241, 246 (S.D.N.Y. 2003) (quoting Weyant, 101 F.3d at 852). Mr.

Lilakos concedes in his Amended Complaint that section 28-207.4.2 of the New York City

Administrative Code orders law enforcement officers to "immediately act upon and enforce [a

vacate order]." (See Am. Compl. ¶¶ 138–39.) Further, the Vacate Order warns violators that they

are "subject to arrest." (Am. Compl., Ex. C.) A violation of a DOB commissioner's vacate order

is unlawful and classified as an "immediately hazardous" violation, which is punishable by fine

and/or imprisonment. N.Y.C. Admin. Code §§ 28-201.1, 28-201.2, 28-301.1.[11] Mr. Lilakos

admits he was on the premises of the Property while the Vacate Order remained posted, which is

an unlawful act punishable by imprisonment. The officers therefore had probable cause to arrest

Mr. Lilakos and any amendment to add the individual officers to allege a false arrest claim

would be futile. Therefore, Defendants' motion to dismiss Mr. Lilakos's false arrest claim should

be granted.

      However, Plaintiff should be given the opportunity to amend his claim to name the

arresting officers as he alleges sufficient facts to state an excessive force claim. In determining

whether an officer used excessive force, the Court examines the reasonableness of the officers'

conduct. Graham v. O'Connor, 490 U.S. 386, 395 (1989) (analyzing claims of excessive force in

the course of an arrest or other seizure of a free citizen under the Fourth Amendment

---

[11] Mr. Lilakos claims he could only be arrested if he refused to vacate the Property. (Opp'n at 24.) He is incorrect.

reasonableness standard). In assessing "reasonableness," the Court balances the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396; Kerman v. City of N.Y., 261 F.3d 229, 239 (2d Cir. 2001). Mr. Lilakos alleges that with guns aimed at him, the three officers screamed at him not to "[expletive] move," to "turn the [expletive] around," and to get on his "[expletive] knees." (Id. ¶ 135.) When he complied, Mr. Lilakos told the officers that he needed to stretch a leg that was cramping. (Id.) One officer threatened Mr. Lilakos to "hurt [him] with [the officer's] gun if he didn't stay on his knees without moving." (Id.) The officers handcuffed Mr. Lilakos in front of his neighbors, and thus succeeded in their "attempt to harass, humiliate, embarrass, terrify, and traumatize Louis." (Id. ¶ 135.)

These allegations could state a claim of objectively unreasonable and therefore excessive force. See Green v. City of Mt. Vernon, 96 F. Supp. 3d 263, 296–97 (S.D.N.Y. 2015) (citing Kerman, 261 F.3d at 233 (holding that a statement by a police officer of "Listen you fucking nut-job, just hold still or I'll blow your brains out," could constitute "objectively unreasonable and therefore excessive" force (internal quotation marks omitted))). As Mr. Lilakos's arrest took place in July 2013, the three-year statute of limitations has not yet expired. It is therefore recommended that Mr. Lilakos should be given an opportunity to amend his complaint to name the officers he alleges used excessive force when they arrested him.

### E. Malicious Prosecution

Defendants make no specific argument challenging the sufficiency of Plaintiffs' malicious prosecution allegations. Although I deem Ms. Lilakos's and Mr. Pritzakis's allegations insufficient, I recommend that Mr. Lilakos's malicious prosecution claim should proceed. The federal cause of action for malicious prosecution requires both a showing of a Fourth

Amendment violation and the elements of a malicious prosecution claim under state law. <u>Fulton v. Robinson</u>, 289 F.3d 188, 195 (2d Cir. 2002). The elements under New York law are: (1) the initiation of an action by the defendant against him, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff." <u>Engel v. CBS, Inc.</u>, 145 F.3d 499, 502 (2d Cir. 1998) (quoting <u>O'Brien v. Alexander</u>, 101 F.3d 1479, 1484 (2d Cir. 1996)). Unlike the typical malicious prosecution case, Plaintiffs here allege that Defendants unlawfully initiated administrative proceedings. When the alleged action is non-criminal, the plaintiff must also demonstrate a "special injury," <u>i.e.</u>, "some interference with [the] plaintiff's person or property . . . beyond the ordinary burden of defending a lawsuit." <u>Engel</u>, 145 F.3d at 502 (quoting <u>O'Brien</u>, 101 F.3d at 1484); <u>see also</u> <u>Engel v. CBS, Inc.</u>, 93 N.Y.2d 195, 205 (1999) ("What is 'special' about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit."); <u>Campion Funeral Home, Inc. v. State of N.Y.</u>, 569 N.Y.S.2d 518, 521 (App. Div. 3d Dep't 1991) (holding that claimants' legal expenses in defending the charges and injury to claimants' reputation "do not constitute special damages not normally attendant upon being sued"). Moreover, because the constitutional rights implicated by a criminal malicious prosecution are "not automatically implicated in a malicious [prosecution] civil suit," the plaintiff must allege that there has been "some deprivation of liberty consistent with the concept of 'seizure'" as defined by the Fourth Amendment. <u>Washington v. Cnty. of Rockland</u>, 373 F.3d 310, 315–16 (2d Cir. 2004) (internal quotation marks and citations omitted).

Plaintiffs Ms. Lilakos and Mr. Pritzakis fail to allege a deprivation of liberty that would amount to a Fourth Amendment seizure because, as discussed above, they have not established

that they have a protected interest in the Property. See U.S. v. Jones, 132 S. Ct. 945, 958 (2012) ("A seizure of property occurs when there is 'some meaningful interference with an individual's possessory interests in that property.'" (citation omitted)). However, Mr. Lilakos sufficiently alleges a property interest. The second element of 'malice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff.'" Manganiello v. City of N.Y., 612 F.3d 149, 163 (2d Cir. 2010) (citation omitted). Mr. Lilakos here alleges malice by stating that the OSE "meticulously put everything together to try to make it sound as if there were some kind of horrendously dangerous condition of overcrowding at [Plaintiffs'] home." (Am. Compl. ¶ 320.) Moreover, although only four of the five NOVs were upheld in the underlying proceedings, it is unclear whether Mr. Lilakos is foreclosed from raising a malicious prosecution claim on the basis of the single dismissed charge. In the criminal context, a finding of probable cause to arrest on one charge does not necessarily defeat the arrestee's claims of malicious prosecution based on other criminal charges resolved in his favor. Janetka v. Dabe, 892 F. 2d 187, 190 (2d Cir. 1989) (reasoning that if the dispositive factor is whether the dismissed charge and upheld charge "arose out of events that occurred on the same occasion" "then police officers could add unsupported serious charges to legitimate minor charges with impunity"). As Defendants make no argument that persuades the Court regarding Mr. Lilakos's malicious prosecution claim, Defendants' motion to dismiss Plaintiffs' malicious prosecution claim regarding the enforcement of the Vacate Order should be granted only as to Ms. Lilakos and Mr. Pritzakis.

### F.  § 1985 Conspiracy

Plaintiffs claim injury under two parts of Section 1985. The first relevant subsection applies to obstruction of access to federal and state courts. As applicable here, that provision

prohibits two or more persons from conspiring to influence the verdict of "any court of the United States" or hinder the "due course of justice in any State" with the intent to deny to any citizen the equal protection of the laws or to injure him or his property for enforcing any person's right to the equal protection of the laws. 42 U.S.C. § 1985(2). "[A]ny court of the United States" denotes federal courts. Kush v. Rutledge, 460 U.S. 719, 724 (1983). The prohibition against conspiracies to obstruct justice "in any State" applies to obstruction in state courts. Id. at 725. A plaintiff must allege class-based animus to state a claim for denial of access to state courts, Griffin v. Breckenridge, 403 U.S. 88, 102 (1971), but no such requirement exists for an action asserting denial of access to federal courts, Kush, 460 U.S. at 726.

Plaintiffs do not allege the denial of access to federal or state courts. Rather, they claim that the OSE defendants interfered with proceedings before an administrative body by exerting "ex-parte influence" over the ECB. (Am. Compl. ¶¶ 78, 314.) This is not redressable under § 1985(2). See Burke v. State of Ct. Dep't of Labor, No. 3:08-mc-124, 2008 WL 1883911, at *2 (D. Conn. Apr. 28, 2008) ("To the extent Plaintiff claims that Defendants conspired to obstruct justice, interference with or obstruction of administrative proceedings is not redressable under 42 U.S.C. § 1985(2)). Nor do Plaintiffs allege any class-based animus against them. They therefore fail to state a claim under § 1985(2).

Plaintiffs also cite § 1985(3), which prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws or equal privileges and immunities under the law. Id. § 1985(3). Under § 1985(3), the plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a

right or privilege of a citizen of the United States." <u>Coggins v. Cnty. of Nassau</u>, 988 F. Supp. 2d

231, 248 (E.D.N.Y. 2013). The plaintiff must also allege that there was "some racial or perhaps

otherwise class-based, invidious discriminatory animus behind the conspirators' action." <u>Id.</u> A

"'complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a

person of constitutional rights cannot withstand a motion to dismiss.'" <u>Gyadu v. Hartford Ins.

Co.</u>, 197 F.3d 590, 591 (2d Cir. 1999) (citation omitted); <u>Jenkins v. Miller</u>, 983 F. Supp. 2d 423,

457 (D. Vt. 2013). Plaintiffs fail to allege any racial or other discriminatory animus behind

Defendants' conspiracy. Their § 1985 allegations therefore fail to state a claim for relief and

Defendants' motion to dismiss should be granted.

### G. State Law Claims

In addition to their federal law claims, Plaintiffs assert claims of abuse of process, willful

misconduct, and gross negligence. Defendants make no argument that Plaintiffs fail to state a

claim under state law. Rather, they rest on the theory that absent any viable federal law claims,

the Court should decline to exercise supplemental jurisdiction to decide Plaintiffs' state law

claims. (Mem. at 23–24; Reply at 14.) Because I recommend that some of Mr. Lilakos's federal

claims should proceed, and Defendants offer no alternative argument, Defendants' motion to

dismiss Plaintiffs' state-law claims should be denied.

### IV.   Rule 8

Defendants also argue that the "lengthy, verbose" Amended Complaint fails to comply with

Rule 8(a)(2)'s requirement that a pleading contain, amongst other things, a "short and plain

statement of the claim showing that the pleader is entitled to relief." (Mem. at 7.) However, *pro

se* complaints may comply with Rule 8(a)(2) even if they are "unnecessarily long and not well

organized" so long as the complaint provides the defendant "'fair notice of what the plaintiff's

27

claim is and the grounds upon which it rests.'" Diaz v. City Univ. of N.Y., No. 13 Civ. 2038, 2015 WL 5577905, at *9 (S.D.N.Y. Sept. 22, 2015) (quoting Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004)). In any event, Judge Chen indicated that Rule 8 would not be a basis for dismissal of this complaint. (See ECF No. 43-2 (Tr.) at 4.) I therefore recommend that Defendants' motion to dismiss under Rule 8 should be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss Plaintiffs' Amended Complaint should be granted in part and denied in part. Should this Report and Recommendation be adopted, Plaintiff Louis Lilakos should be given an opportunity to amend his complaint to explicitly raise an excessive force claim and to name the officers who arrested him on July 18, 2013.[12]

### FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

14 USMJ BLOOM

Dated: January 21, 2016
     Brooklyn, New York

LOIS BLOOM
United States Magistrate Judge

---

[12] The City of New York should be prepared to provide the names of the arresting officers, their badge numbers, and their current service addresses pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997) (per curiam).